IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 7, 2001 Session

## STATE OF TENNESSEE v. TORAYO OLANDIS BROWN

**Appeal from the Circuit Court for Hardeman County**
**No. 6300     Jon Kerry Blackwood, Judge**

---

**No. W2000-00472-CCA-R3-CD  - Filed February 4, 2002**

---

The defendant, Torayo Olandis Brown, was convicted of possessing with intent to deliver more than .5 grams of cocaine, a class B felony.  The trial court imposed a sentence of eight years and nine months, ordering eight months to be served in the local jail and the balance to be served in a community corrections program.  In this appeal of right, the defendant contends that (1) the evidence is insufficient to support his conviction; (2) the trial court erred by allowing the state to impeach him with a prior conviction; and (3) the state improperly argued that he was impeached by the prior conviction.  Because of plain error in the trial court's failure to provide a limiting instruction relating to the impeachment evidence, the judgment is reversed and the cause is remanded for a new trial.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Jeannie Kaess, Bolivar, Tennessee, for the appellant, Torayo Olandis Brown.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; and Walt Freeland, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

On February 15, 1999, Sergeant Greg Brown of the Whitesville Police Department detected by radar a car traveling forty-seven miles per hour in a thirty-mile-per-hour speed zone.  Sgt. Brown activated his blue lights and followed the car.  As the car slowed to a stop, two black males jumped from the backseat and ran in opposite directions, leaving the two back doors open.  The defendant, who was driving, and Cedric Jones, who was the front seat passenger, remained in the vehicle.

Sgt. Brown ordered the two men to place their hands on the ceiling of their car while he called for back-up.  While he waited for assistance, Sgt. Brown looked around the car to determine whether the fleeing passengers had discarded anything.  He found no drugs or weapons.  Ten minutes

later, Deputy Michael Kennimore of the Hardeman County Sheriff's Department arrived to assist. Sgt. Brown removed the defendant from the car, handcuffed him, and placed him in the backseat of his patrol car. Deputy Kennimore removed Jones from the car and placed him on the ground to apply handcuffs. As he made the arrest, Deputy Kennimore observed a small brown pill bottle on the ground next to Jones' head. He handed the bottle to Sgt. Brown, who opened it and observed several small pieces of a solid, milky-white substance resembling crack cocaine. When the officers searched the car, they found no drugs or drug paraphernalia. Jones and the defendant were arrested and taken to the Whitesville Police Department. The two men who left the scene were never found.

There were thirty-one small pieces inside the bottle. Laboratory tests established that the bottle contained 1.8 grams of cocaine base, or crack cocaine.

At trial, the defendant testified that he borrowed the car from his cousin, Angela. He claimed that he picked up Jones, also a cousin, and drove him to Whitesville to find his mother. According to the defendant, they encountered a man named Torrell McKinney, whom they had known for some time, and another unknown individual. The defendant agreed to drive McKinney and his companion to McKinney's girlfriend's house. The defendant claimed that when he was stopped by police, McKinney and his companion jumped from the backseat and ran away. The defendant contended that he had never seen the pill bottle and insisted that the drugs were not his.

Jones, who was tried jointly with the defendant, provided essentially the same account. He acknowledged, however, that he initially informed officers that the drugs belonged to the defendant and that the defendant had thrown them out the back door. At trial, Jones recanted and claimed that he implicated the defendant only to protect himself from arrest.

I

The defendant first argues that the evidence was insufficient because the state failed to prove beyond a reasonable doubt that the substance tested by the TBI crime lab was the same substance admitted into evidence at trial. As a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody. State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). The purpose of the chain of custody requirement is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). While the state is not required to establish facts which exclude every possibility of tampering, the circumstances established must reasonably assure the identity of the evidence and its integrity. State v. Ferguson, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987). This rule does not require absolute certainty of identification. Ritter v. State, 462 S.W.2d 247, 250 (Tenn. Crim. App. 1970). Absent sufficient proof of the chain of custody, however, the "evidence should not be admitted . . . unless both identity and integrity can be demonstrated by other appropriate means." Neil P. Cohen et al., Tennessee Law of Evidence § 9.01[13][c] (4th ed. 2000). A leading Tennessee treatise provides as follows:

The concept of a "chain" of custody recognizes that real evidence may be handled by more than one person between the time it is obtained and the time it is either introduced into evidence or subjected to scientific analysis. Obviously, any of these persons might have the opportunity to tamper with, confuse, misplace, damage, substitute, lose and replace, or otherwise alter the evidence or to observe another doing so. Each person who has custody or control of the evidence during this time is a "link" in the chain of custody. Generally, testimony from each link is needed to verify the authenticity of the evidence and to show that it is what it purports to be. Each link in the chain testifies about when, where, and how possession or control of the evidence was obtained; its condition upon receipt; where the item was kept; how it was safeguarded, if at all; any changes in its condition during possession; and when, where and how it left the witness's possession.

Id. The issue addresses itself to the sound discretion of the trial court; its determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion. State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987); State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984). Reasonable assurance, rather than absolute assurance, is the prerequisite for admission.

Here, Kay Sheriff of the TBI identified the envelope containing the cocaine by its lab number, the defendant's name, her initials, and the officer's name. Ms. Sheriff recognized her initials and the date on the tape she had used to seal the envelope. When she opened the envelope at trial, she identified the amber pill bottle by the laboratory label, her initials, and the handwritten laboratory number. She observed that the bottle was still sealed with tape containing her initials. In our view, the evidence presented at trial was properly identified as that received by the TBI.

## II

The defendant next contends that there was insufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that he possessed with the intent to deliver over .5 grams of cocaine. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Tennessee Code Annotated § 39-17-417 provides in pertinent part as follows:

> (a)  It is an offense for a defendant to knowingly:
> * * *
> (4)  Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.
> * * *
> (c)  A violation of subsection (a) with respect to:
> (1)  Cocaine is a Class B felony if the amount involved is point five (.5) grams or more of any substance containing cocaine and, in addition thereto, may be fined not more than one hundred thousand dollars ($100,000) . . . .

Tenn. Code Ann. § 39-17-417(a)(4), (c)(1).  Tennessee Code Annotated § 39-17-402(6) defines "delivery" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."  Additionally, Tennessee Code Annotated § 39-17-419 states that "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."  Possession, which may be either actual or constructive, can be established by evidence that the defendant has the ability and the intent to exercise dominion or control over the substance.  State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991).

Perhaps the most compelling piece of evidence against the defendant was Jones' statement to police that the pill bottle belonged to the defendant and that the defendant had thrown it out the back passenger door.  This pre-trial statement was clearly hearsay and was admissible only as non-substantive evidence to impeach Jones.  See State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000).  There was no objection, however, to the admission of this evidence and the trial court failed to provide an instruction limiting the value of the evidence.  When a defendant fails to object, the jury may consider that evidence for its "natural and probative effects as if it were in law admissible."  Id. at 280 (quoting State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981)).  Thus, the jury could consider this pre-trial statement by Jones as substantive evidence of the defendant's guilt.

The evidence would be insufficient to support the finding of guilt without the pre-trial statement of Jones.  Yet Jones' pre-trial statement clearly allowed the jury to conclude that the defendant possessed the drugs.  Furthermore, the quantity and packaging of the cocaine justified the jury's conclusion that it was possessed for the purpose of dispensing it.  See Tenn. Code Ann. § 39-17-419.  This issue lacks merit.

III

Although not raised as error, this court in its discretion may notice at any time an error "where necessary to do substantial justice."  Tenn. R. Crim. P. 52(b).  There are five factors which must be present for a court to determine "plain error" exists:

(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282 (citing State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). In our view, the failure of the trial court to give a limiting instruction relating to the introduction of Jones' hearsay statement was plain error.

Our supreme court has recognized that "the failure to give the limiting instruction may amount to fundamental error constituting grounds for reversal, even in the absence of a special request [by counsel]." State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982). The court, however, noted that such action was limited to those cases where "the impeaching testimony is extremely damaging, the need for the limiting instruction is apparent, and the failure to give it results in substantial prejudice to the rights of the accused." Id. In Reece, our high court concluded that the prior inconsistent statements were apparently considered by the jury as substantive evidence of guilt, thereby resulting in "substantial prejudice" to the defendant. Id. The case was remanded for a new trial. Id.

In Smith, our supreme court determined that the trial court's failure to give such an instruction was not plain error. 24 S.W.3d at 284. In that case, however, both defense counsel and the defendant agreed at trial to forego the objection. Id. at 283-84. Thus, the court concluded that the "considered and deliberate choice to waive a proper objection in order to gain a tactical advantage" precluded a finding of plain error. Id. at 284.

This case is distinguishable from Smith and is more akin to Reece. The impeaching testimony was critical for the state. Without it, the evidence is insufficient to support the verdict of guilt. Thus, the failure to provide a limiting instruction clearly resulted in substantial prejudice to the accused. Most importantly, there is no indication that the failure to object was tactical, nor can this court fathom why the failure to object could have qualified as a reasonable strategy.

The appropriate remedy is a reversal of the conviction and a remand for new trial. See State v. Emit Keith Cody, No. E2000-02188-CCA-RM-CD (Tenn. Crim. App., at Knoxville, Nov. 28, 2000) (reversed and remanded for new trial where, without admission of prior statement for substantive purposes, evidence would have been insufficient for the conviction).

IV

Although a new trial is warranted on a plain error basis, there are other issues. The defendant next contends that the trial court should not have allowed the state to impeach him using his prior conviction for simple possession. Tennessee Rule of Evidence 609 provides that a witness may be impeached by a conviction for a crime involving dishonesty or having a possible sentence of greater than one year. Tenn. R. Evid. 609. No prior notice was given. The conviction was a misdemeanor

that did not involve a crime of dishonesty. Thus, the state did not comply with the terms of Rule 609. Rule 609, however, is not the only avenue by which a prior conviction may be used to impeach. Neil P. Cohen et al., supra, § 6.09[2][b]. In State v. Bray, this court held that while a prior misdemeanor drug conviction cannot be used to attack a testifying defendant's credibility, the defendant is not allowed to use this shield as a sword by giving false testimony. 669 S.W.2d 684, 687 (Tenn. Crim. App. 1983).

Upon being asked during cross-examination if the cocaine found by Deputy Kennimore belonged to Cedric Jones, the defendant answered, "I don't really know whose it was. I never been around a drug dealer." After defense counsel objected, the defendant again stated, "I said I ain't never been around no drug dealer. I don't know what he do, or nothing." During a jury-out hearing, the state obtained permission to use the defendant's simple possession conviction to impeach this statement. While ruling that Rule 609 did not permit use of the conviction to impeach, the trial court observed that the defendant may have been caught in a "falsehood" and the state had the right to impeach his credibility. Upon questioning by the state, the defendant admitted that he had pled guilty to misdemeanor possession of drugs on November 19, 1998. Additionally, the trial court instructed the jury that it could use the fact of the defendant's prior conviction only in assessing the defendant's credibility as a witness.

In our view, the defendant's unsolicited remark "opened the door" to cross-examination regarding his prior conviction for simple possession. A witness cannot be permitted to create a false impression before the jury and expect the state to do nothing. See id.; see also State v. Randy Joy, No. 02C01-9705-CC-00183 (Tenn. Crim. App., at Jackson, Nov. 25, 1997). Further, the question posed by the state was relevant and not designed to invite an untruthful response. Cf. Hatchett v. State, 552 S.W.2d 414 (Tenn. Crim. App. 1977) (stating that "[t]he state cannot ask a witness an irrelevant but prejudicial question and then, under a theory of impeachment, predicate a second irrelevant and prejudicial question upon the defendant's response"); State v. Hurd, No. E1999-01341-CCA-R3-CD (Tenn. Crim. App., at Knoxville, April 10, 2001) (holding that the state may not circumvent the requirements of Rule 609 by questioning the defendant on an irrelevant matter in a manner that invites untruth). The trial court did not abuse its discretion by allowing the state to cross-examine the defendant about his prior conviction for simple possession.

V

Finally, the defendant contends that the state improperly argued that the defendant's testimony had been impeached by his conviction for simple possession. In general, closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994). Arguments must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law. State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999). The bounds of proper closing argument are delineated by the facts in evidence. State v. Pulliam, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996). Conversely, facts not in evidence may not be the subject of comment by counsel during closing argument. State v. Mackey, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982).

In this instance, the district attorney general remarked "[the defendant] said he didn't have anything to do with drug dealers or drugs. And you heard that he has been found guilty on an event of November of 1998 of that. And that's to be used by you only for purpose of judging whether or not he is telling the truth." Because it was predicated on evidence introduced during trial, and limited to impeachment of the witness, the argument was not improper. Thus, this issue also lacks merit.

For the reasons stated, the judgment is reversed and the cause is remanded for a new trial.

_____
GARY R. WADE, PRESIDING JUDGE