**STATE of Tennessee, Appellee,**

v.

**Butch BRAY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 26, 1983.

Permission to Appeal Denied by the Supreme Court Oct. 31, 1983.

Neal L. Thompson, Chattanooga, for appellant.

William M. Leech, Jr., Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, Stephen N. Bevil, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

The defendant, Butch Bray, and his eighteen-year-old son, Tray Bray, were jointly indicted by the Hamilton County Grand Jury in a three-count indictment charging them with feloniously attempting to sell and/or deliver a controlled substance and feloniously obtaining money under false pretenses. Both the defendant and co-defendant were found guilty of feloniously obtaining money under false pretense of a monetary value of less than Two Hundred Dollars ($200), with the punishment for each fixed at confinement in the State Penitentiary for not less than one (1) year nor more than three (3) years.

In his appeal, Butch Bray challenges the sufficiency of the evidence and says the trial court erred in allowing the assistant attorney general to cross-examine the defendant concerning prior misdemeanor convictions for the unlawful possession of controlled substances.

While the co-defendant elected not to appeal and his case is not before us, in order to properly consider the sufficiency issue raised by the appealing defendant, we have examined the record and will summarize the evidence as to each defendant below. It is the theory of the State that this defendant acted in concert with his son, the co-defendant.

Detective William F. Greeson of the Hamilton County Sheriff's Office was working undercover in the narcotics division. He was being assisted by a paid informant named Sonny Lively. After a telephone conversation between Lively and the co-defendant, Tray Bray, during which arrangements were made to purchase fifty (50) Quaaludes, Detective Greeson and Lively drove to the Bray residence. Tray Bray came to the front porch, confirmed the order for fifty (50) pills and reentered the house, at which time, according to the testimony of Officer Greeson, he observed the defendant, who was seated just inside the front door, hand to Tray a small white package. Tray Bray then proceeded to the officer's car and handed him two (2) plastic bags, each containing twenty-five (25) tablets scored "Lemmon 714". The officer gave Tray Bray One Hundred Dollars ($100) in exchange for the two bags of tablets. Greeson testified he thought he was buying methaqualone. Subsequent to the transaction and just prior to the officer driving away, Detective Greeson heard the defendant shout to the co-defendant, "Tell

those boys to come back any time; we have anything they want."

Mr. Raymond Siler, a forensic chemist, testified that he tested and analyzed the tablets and found they did not contain methaqualone. He stated the marking "Lemmon 714" on the tablets would represent, if legitimate, that the tablets were manufactured by Lemmon Pharmaceutical Company under the brand name Quaalude containing methaqualone.

Tray Bray admitted during his testimony at trial that Sonny Lovely contacted him by phone and asked if he could get him fifty (50) Quaaludes for Two Dollars each. Young Bray then went to the "Nickel Bag" in Hixson, where he bought a box of pills for $8.30, which he knew contained no drugs and believed to be chalk. The next day, he delivered fifty of these chalk pills to Lively and Greeson, for which he received One Hundred Dollars ($100). He denied getting the pills from his father, Butch Bray. He said his father was drunk at the time and although he was lying on the couch in the living room during the transaction, had no knowledge of it. He denied hearing his father say, "Tell the boys to come back any time; we have anything they want." Young Bray denied being a drug dealer and said he was motivated by a desire to join the Navy and thought helping the police make a "good bust" on a drug deal would somehow achieve this goal.

Butch Bray testified in his own behalf to the effect that he was drinking that day and didn't know what was going on. He denied handing any pills to his son and denied the statement attributed to him by Detective Greeson.

The essential elements of the crime of obtaining money by false pretenses were enumerated by the Supreme Court in *Mullican v. State*, 210 Tenn. 505, 360 S.W.2d 35 (1962) as follows:

The false representation made must be representative of a past or existing fact, whether it be by oral or written words or conduct, which is calculated to deceive and does as a matter of fact deceive; and by means of which by doing these things, the person who does it obtains something of value from the person injured without proper compensation. (citations omitted) ... under this statute, the intent to defraud is the gravamen or an essential element in the crime.

The proof in this case clearly established that Tray Bray sold fifty pills to the officer, representing them to be Quaaludes, when he knew they were fakes, probably consisting of chalk, and by this deception, the officer was induced to and did, in fact, give Bray One Hundred Dollars ($100). There can be no question but that he obtained this money by false pretenses.

■ The defendant, Butch Bray, contends that he cannot be guilty of this offense since there is absolutely no evidence that he ever came into possession of the money. We do not believe there is any such requirement under the law.

■ All persons present, aiding and abetting, or ready and consenting to aid and abett, in any criminal offense, shall be deemed principal offenders and punished as such. T.C.A. § 39–1–303.

■ A conspiracy is defined as a combination between two or more persons to do a criminal or unlawful act, or a lawful act by criminal or unlawful means. *State v. Smith*, 197 Tenn. 350, 273 S.W.2d 143 (1954). When persons act together to commit an offense, the actions of one may be imputed to the other, and on that basis, each may be found guilty of the substantive offense committed. In *Randolph v. State*, 570 S.W.2d 869 (Tenn.Cr.App.1978), *cert. denied*, Judge Tatum, writing for this Court, summarized this doctrine as follows:

Evidence of any act or declaration of a conspirator during the conspiracy, and in furtherance of it, is admissible as substantive evidence against any co-conspirator on trial for the commission of the target crime. The act or declaration of one conspirator, or accomplice, in the prosecution of the criminal enterprise, is considered the act of all, and is evidence against all. Each conspirator and accom-

plice is deemed to assent to what is done by any other in furtherance of the common object. To prove a conspiracy, it is not necessary that the State show a formal agreement between the parties to do the unlawful act, but a mutual implied understanding is sufficient, although not manifested by any formal words, or by a written agreement. The unlawful confederation may be established by circumstantial evidence and the conduct of the parties in the execution of the criminal enterprise. Conspiracy implies concert of design and not participation in every detail of execution. *See, Solomon v. State,* 168 Tenn. 180, 76 S.W.2d 331 (1934); *Owens v. State,* 84 Tenn. 1 (1885); *Strady v. State,* 45 Tenn. 300 (1868); 3 Wharton's Criminal Evidence, Sec. 642 (13 Ed.1973).

■ By its verdict, the jury obviously accredited the State's witnesses in establishing that the defendant did, in fact, hand the subject pills to his son and make the implicating statement heard by Detective Greeson. These issues of fact made a jury question. It is well established that a jury verdict approved by the trial judge accredits the testimony of the witnesses for the State, and resolves all conflicts in favor of the theory of the State. *State v. Hatchett,* 560 S.W.2d 627 (Tenn.1978). Taking the strongest legitimate view of the evidence in the State's favor, *State v. Pritchett,* 524 S.W.2d 470 (Tenn.1975), there is sufficient direct and circumstantial evidence to support the conclusion that Butch Bray acted in concert with his son and aided and abetted in obtaining this money by false pretenses. It follows that this Court is unable to find that the evidence submitted to this jury was insufficient to support a finding by any rational trier of fact that appellant was guilty beyond a reasonable doubt of the offense for which he was convicted. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Patton,* 593 S.W.2d 913 (Tenn.1979). The appellant's challenge to the sufficiency of the evidence is without merit.

■ We will now consider the assignment concerning cross-examination of the defendant below.

Before calling the defendant as a witness in his own behalf, his court-appointed attorney sought, by motion *in limine,* to prohibit the State from cross-examining his client concerning a burglary conviction in 1968, and two misdemeanor drug possession convictions. The trial judge granted the motion but, in doing so, cautioned defense counsel, "Of course, you know now if you should open the door by any of your questions then, of course, the Attorney General has the right to go in and cross-examine."

During direct examination, the defendant was questioned as to whether he handed the two bags to Tray Bray, to which he responded, "No, sir, I do not mess with no drugs at all." On cross-examination, the defendant was asked if he was intoxicated on the day of the sale, to which he replied:

> If I didn't have to come to Court today, I'd be intoxicated today. I'm an alcoholic; I admit it, but what can I do, you know? I mean, I'm a sick man, but I do not violate no laws, sir, either. If it's against the law to violate … drink alcohol, you just got me.

At another point during cross-examination, when he was asked about the statement made to his son, the defendant volunteered that he didn't like that dope stuff and had always had that attitude about drugs.

We agree with the trial judge that by these unresponsive comments, the defendant clearly "opened the door" for cross-examination concerning his prior drug involvement as evidenced by the two prior misdemeanor convictions. *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976) and *Hatchett v. State,* 552 S.W.2d 414 (Tenn.Cr. App.1977) shield a testifying defendant from a general attack on his credibility as a witness by the use of prior misdemeanor convictions for unlawful possession of controlled substances. This protection was afforded this defendant in this case; however, he sought to use this shield for a sword by interjecting the question of his law-abiding character and his attitude

about drugs into the trial. By this action, he left himself open to impeachment by evidence contradicting his testimony on these specific points.

In *State of Tennessee v. Larry Gilliam,* Hawkins County No. 54 (Tenn.Cr.App., Knoxville, February 26, 1982), this Court held it was proper for the State to introduce a misdemeanor narcotics conviction to rebut defendant's assertion that he had never had any dealings with drugs. In *State of Tennessee v. Odell Poag,* Shelby County No. 9 (Tenn.Cr.App., Jackson, November 13, 1980), this Court held that the State could introduce evidence of defendant's conviction for the sale and possession of cocaine and marijuana when defendant denied involvement of any kind with said drugs except for a single conviction for possession of marijuana. *See also, State v. Patton,* 593 S.W.2d 913 (Tenn.1979).

Under the facts of the instant case, the trial judge did not abuse his discretion by allowing the complained of cross-examination.

Both assignments of error are overruled and the judgment of the trial court is affirmed.

DWYER and O'BRIEN, JJ., concur.