**BRANDY HILLS ESTATES, LLC**

v.

**William Vernon REEVES, et al.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 25, 2006 Session.

Dec. 15, 2006.

Rehearing Denied Jan. 22, 2007.

Permission to Appeal Denied by Supreme Court June 25, 2007.

Tracy C. Wooden, Chattanooga, Tennessee, for the appellants, William Vernon Reeves and wife, Deolvia Hunnicut Reeves, William M. (Mickey) Reeves, Sr., and Jere R. Reeves, Vivian Reeves Dykes and the City of New Hope, Tennessee.

Edwin Z. Kelly, Jr., Jasper, Tennessee, for the appellee, Brandy Hills Estates, LLC.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

## I.

The plaintiff brought this action to establish that a public road, Pine Grove Road, extended to its northern property line and that it had a right of access to the road. The defendants, owners of the adjoining property, and the City of New Hope, Tennessee, contend that the public road terminated short of the plaintiff's property, within the private property of the defendant property owners, and that the plaintiff had no right of access. The jury found the plaintiff had proved by clear and convincing evidence that the disputed property, which was at the end of the paved portion of Pine Grove Road, was a public road dedicated by implication, and the right-of-way extended to the plaintiff's property. The defendants appeal. We affirm.

Plaintiff, Brandy Hills Estates, LLC, acquired approximately 300 acres of real estate located in the City of New Hope, Tennessee, in June of 1999 with the intent to develop a planned residential community to be known as Brandy Hills Estates.[1] Plaintiff initially planned to use Long Island Road, a public road on the west of Brandy Hills Estates, as the means of ingress and egress for the subdivision. Subsequently, Plaintiff elected to also utilize another public road, Pine Grove Road, as an additional means of ingress and egress.[2]

Plaintiff met substantial resistance from its northern neighbors, several members of the Reeves family,[3] and the local municipality, the City of New Hope, when it attempted to follow through with its plan to use Pine Grove Road as the northern ingress and egress to the development to be known as Brandy Hills Estates. One of the more apparent indications was a fence erected on the Reeves' property to prevent anyone from traveling across the property line the Reeves and Plaintiff shared. When it became apparent the Reeves and Plaintiff would not be able to reach an amicable resolution, Plaintiff filed this action in the Chancery Court for Marion County seeking the removal of the Reeves' fence and an injunction preventing the obstruction of Plaintiff's right of access to Pine Grove Road.[4]

The pivotal issue at the center of the dispute is whether the southern terminus of the public road known as Pine Grove Road extends to Plaintiff's property line, or whether the public road stops short of Plaintiff's property line, within the Reeves' property. It is undisputed that the paved surface of Pine Grove Road terminates a few feet north of Plaintiff's property line within the Reeves' property. What is disputed is whether the right-of-way of the public road extends beyond the paved surface onto Plaintiff's property.

1. William Cordell Childs and Danny Thomas are the members of Brandy Hills Estates, LLC. Brandy Hills acquired the property from William Cordell Childs and his wife, Wanda Kay Childs. William Childs and Terry Cardin initially purchased 177 acres from E.J. Houser. Subsequently, Childs and his wife purchased the remaining acreage from Houser, and later purchased Cardin's interest.

2. The planned entrance and exit on the west side of the property were in accordance with the subdivision plat submitted to the City of New Hope municipal planning commission.

3. The property had been owned by members of the Reeves family for generations.

4. The original defendants in this matter are William Vernon Reeves, William M. (Mickey) Reeves, Sr., and Jere R. Reeves. Additional members of the Reeves family, Deolvia Hunnicut Reeves, the wife of William Vernon Reeves; and Vivian Reeves Dykes, the daughter of William Vernon Reeves, who claimed a property interest, were added at a later date. Subsequently, the City of New Hope, Tennessee was also added as a defendant.

Plaintiff alleges that Pine Grove Road is a public roadway that has been dedicated and accepted as a public roadway, the right-of-way of which extended to the property line of Brandy Hills Estates. Plaintiff also alleges it has a right of access to Pine Grove Road and that the Reeves' actions deprive Plaintiff of its right of access. In the alternative, Plaintiff claims it has a prescriptive right and/or easement to connect the subdivision to Pine Grove Road because its predecessors in title,[5] dating back to 1949, continuously, openly and adversely utilized the road as one of the means of access to the property until 1998 when the original defendants erected a fence and posted a sign on the tree at the property line indicating not to exit therefrom.

The original defendants, several members of the Reeves family, filed an Answer claiming they owned the property between the terminus of the paved road and Plaintiff's property. They also contend as owners of the property they lawfully erected and maintained the fence to prevent Plaintiff and others from accessing Pine Grove Road from Plaintiff's property.

The local municipality, the City of New Hope, Tennessee, was added as a party to this action by agreed order in April of 2003. The City was added after it passed an ordinance to abandon the thirty-foot segment of the southern terminus of Pine Grove Road.[6] Thereafter, the Reeves asserted that the issue of whether the right-of-way of the Pine Grove Road touched Plaintiff's property was moot because the shortened Pine Grove Road clearly did not touch the Plaintiff's north property line.[7] Thereafter, on December 29, 2003, the City of New Hope passed a resolution to condemn the disputed portion of Pine Grove Road. As a consequence of the recent resolution, the City filed a Complaint for Condemnation in the Circuit Court seeking to inversely condemn any property right, if any, Plaintiff may have to the disputed property. In February of 2004, the Circuit Court issued an Order of Possession, giving the City of New Hope property rights to the Pine Grove Road thirty feet north of the Plaintiff's property line. The condemnation proceeding in the Circuit Court has been held in abeyance since the issuance of the Order of Possession, awaiting the outcome of this Chancery Court action.

The trial of this action began March 1, 2004. The gravamen of this action was to determine the rights of Plaintiff, if any, relative to the disputed property. As the Chancellor acknowledged, if the jury determined that Plaintiff possessed any rights or interests in the disputed property, the issue of damages would be within the jurisdiction of the Circuit Court and resolved in the pending condemnation action.

At the conclusion of the Chancery Court trial, the jury found that Plaintiff proved by clear and convincing evidence that Pine Grove Road was a public road dedicated by implication, and the right-of-way extended to Plaintiff's property. The jury

---

5. E.J. Houser acquired the Brandy Hills property in 1949. William Cordell Childs acquired the property from Houser in 1997 and owned it until Brandy Hills Estates, LLC, acquired the property in 1999.

6. The City passed the ordinance for the stated reason that access to and from the Brandy Hills Estates subdivision via Pine Grove Road

was not in the best interest of the City or the welfare of its citizens.

7. The trial court set aside the first ordinance and a subsequent similar ordinance for lack of adequate public notice. The third ordinance, which the court upheld, "abandoned" the city's interest, if any, in the disputed thirty feet of property.

also specifically found that Pine Grove Road connected with Plaintiff's property at the location "where the gap was in the fence and that the road was twelve feet in width." The City and the Reeves appealed.

## II.

### ISSUES

The Appellants, the City of New Hope and the Reeves, are represented by the same counsel and collectively present several issues for our review. Unfortunately, the seven issues they identify with clarity on page one of their brief, under the heading Statement of Issues Presented for Review, are not consistent with the issues discussed in the arguments presented in the brief.[8] Some of the issues that were identified for our review are not discussed, and issues discussed in the argument are not listed under the heading, "Statement of Issues Presented for Review."

The issues presented for our review that are discussed in the appellants' brief with citations to the record and authority include whether: (1) the City of New Hope was dismissed from the litigation and, if so, whether the trial court erred by continuing the litigation despite the City of New Hope's ordinance abandoning its interest in the property, (2) the Chancery Court had subject matter jurisdiction over the litigation, (3) the court erred by excluding witnesses that were added to the witness list after the deadline, (4) the court erred

by not allowing testimony regarding William "Corky" Child's statements about the property, (5) the court committed reversible error by allowing evidence of the city official's motives behind the passage of the ordinance, (6) the jury issued an advisory opinion or a binding jury verdict, (7) the trial court committed reversible error when instructing the jury regarding the applicable standard of proof, (8) the trial court committed reversible error when instructing the jury regarding dedication and acceptance, (9) the trial court committed reversible error when instructing the jury on the scope of the right-of-way, and (10) the jury's verdict was contrary to the weight of the evidence.

## III.

### WAS THE CITY OF NEW HOPE DISMISSED FROM THE ACTION?

Appellants contend the City of New Hope was dismissed from the case pursuant to a November 6, 2003, Order and that the City's dismissal is fatal to Plaintiff's case.[9] We find Appellants' argument without merit and somewhat disingenuous.

Appellants rely on various orders, each of which fails to clearly state that the City has been dismissed. The Order dated November 6, 2003, assessed the court costs against the City of New Hope. The Order dated December 10, 2003, states, "Those issues having been determined, the Plaintiff has no remaining claim against the City of New Hope in this case."[10] However, the trial court never issued an Order

8. Defendants succinctly identify seven issues under the heading, "Statement of Issues Presented for Review"; however, in the argument they have only five headings for issues, and the sub-issues presented are numerous and not consistent with the seven issues identified earlier.

9. Because the City later condemned the property at issue, the Reeves contend they no longer had sufficient property rights to grant

Plaintiff access to Pine Grove Road. Therefore, Appellants contend the Reeves were no longer real parties in interest capable of granting relief and there remained no party from which Plaintiff could find relief.

10. Defendants also rely on a January 26, 2004, Order that mirrors the earlier order of December 10, 2003. Apparently, the January order was by error.

that expressly dismissed the City. In fact, during the November 13, 2003 hearing, the trial court made it clear the City was not dismissed by stating: "I am not booting anybody out of a lawsuit."

If the foregoing were not enough, and we believe it is, the discussion that occurred prior to the trial in March 2004, upon a Motion to Dismiss filed by Appellants, resolves the issue. During that hearing the trial court clarified the meaning of the December 10, 2003 Order, stating:

> We have heard these arguments on several occasions and I was concerned about the wording in the order that you've referred to that was entered in December ... which in it recitals, recites [sic] the fact that there are some issues, that all issues between the City of New Hope and the plaintiffs have been resolved, but I think counsel for the plaintiffs is right, *there's never been an order that essentially stated the City of New Hope was dismissed from the case* .... So I think that we do have the proper parties before the court, City of New Hope and the Reeves family. The facts haven't change [sic]. The parties shouldn't change either. (emphasis added).

Appellants have failed to identify an order that dismissed the City. There being none, the City remains a party as the trial court repeatedly explained.

## IV.

### THE CITY ABANDONED THE ROAD

■ Appellants contend the City's passage of the ordinance to abandon the road-

way at issue rendered the litigation moot, and the trial court erred by not dismissing the action thereafter. This contention, however, is without merit because it fails to recognize a property owner's right of access.

■ The abandonment of a public road by a government entity does not in and of itself extinguish a property owner's right to access the abandoned road. *See Jackson v. Hutton*, 1932 WL 1320, at *4, 15 Tenn.App. 281 (Tenn.Ct.App.1932); *see also Paschall v. Valentine* 45 Tenn.App. 131, 321 S.W.2d 568, 572 (1958). Therefore, after the City abandoned the road, there still remained the issue of whether Plaintiff had the right of access to Pine Grove Road or, in the alternative, whether Plaintiff had a prescriptive right and/or easement.[11] Although the ordinance abandoning the property was in compliance with all applicable requirements, the trial court correctly allowed the case to proceed in order to determine Plaintiff's rights, if any. *Id.*

## V.

### SUBJECT MATTER JURISDICTION OF THE CHANCERY COURT

Appellants contend the Chancery Court of Marion County lacked subject matter jurisdiction to decide the issues in this case. This argument is without merit.

■ Subject matter jurisdiction "relates to the right of the court to adjudicate, or to make an award through the remedies

---

11. "Whatever may have been the legal consequence of the things done by ... Marion County with the purpose of discontinuing the old road as a public highway, ... it was their intention to substitute the new highway for the old road ...; but, assuming that there was an abandonment of the old road as a public highway, it did not, and could not, affect the private right of the complainants, as abutting landowners, to an easement of access to their premises over the old road." *Jackson v. Hutton*, 15 Tenn.App. 281 (Tenn.Ct. App.1932).

provided by law upon facts proved or admitted in favor of, or against, persons who are brought before the court under sanction of law." 17 Tennessee Jurisprudence, Jurisdiction § 2 (1994). Subject matter jurisdiction concerns the authority of a court to hear a controversy. *Meighan v. U.S. Sprint Commc'ns*, 924 S.W.2d 632, 639 (Tenn.1996). It relates to the nature of the claim and the relief sought. *Id.* A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from legislative acts. *Meighan*, 924 S.W.2d at 639; *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn.Ct. App.1999).

■ Subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn.1994). When subject matter jurisdiction is at issue, the court must ascertain the nature or gravamen of the pending action. *Newsome v. White*, No. M2001–03014–COA–R3–CV, 2003 WL 22994288, at *2 (Tenn.Ct.App. Dec.22, 2003). Once that is determined, the court must determine whether the Constitution of Tennessee, the General Assembly, or the common law have conferred the power to adjudicate cases of that sort on the court. *Newsome v. White*, 2003 WL 22994288, at *2.

■ Subject matter jurisdiction is generally defined by statute or the constitution. *Meighan*, 924 S.W.2d at 639. The General Assembly vested subject matter jurisdiction over condemnation proceedings in the Circuit Court. Tenn.Code Ann. § 29–16–104; *see McLain v. State*, 59 Tenn.App. 529, 442 S.W.2d 637, 639 (1968); *see also H.J.L., L.P. v. Nashville & Eastern R.R. Corp.*, No. 01A01–9811–CH–00589, 1999 WL 499741, at *3 (Tenn. Ct.App. July 16, 1999)(holding the Circuit Court has exclusive jurisdiction over condemnation proceedings). We have, however, held that the Chancery Court had jurisdiction over an ancillary condemnation action in a case where the plaintiff sought to enjoin defendants from preventing its use of the trestle, and sought an equitable easement in addition to the inverse condemnation claim.[12] *See H.J.L., L.P.*, 1999 WL 499741, at *3; *see also Evans v. Wheeler*, 209 Tenn. 40, 348 S.W.2d 500, 502 (Tenn.1961) (wherein the court determined that since the plaintiff had sought an injunction, the Chancery Court retained jurisdiction "insofar as the case turned into eminent domain proceedings").

Although the Circuit Court has subject matter jurisdiction over condemnation actions, this is not a condemnation action. In this action, Plaintiff seeks to determine its property rights in the disputed property, a matter over which the Chancery

---

12. In a case where the Chancery Court granted summary judgment to defendants on the issue of inverse condemnation, the governmental authority argued the Chancery Court lacked jurisdiction to decide the issue, the Court opined, "Jurisdiction for condemnation and inverse condemnation suits is conferred upon the Circuit Courts and not upon the Chancery Courts. *McLain v. State*, 59 Tenn. App. 529, 442 S.W.2d 637 (1968). In *McLain*, the court held the Chancery Court had jurisdiction over a suit for both the reformation of a deed and inverse condemnation. In *Evans v. Wheeler*, 209 Tenn. 40, 348 S.W.2d 500, 502 (Tenn.1961), the court determined that since the plaintiff had sought an injunction, the Chancery Court retained jurisdiction 'insofar as the case turned into eminent domain proceedings.' In this case, plaintiff sought to enjoin defendants from preventing its use of the trestle, and sought an equitable easement in addition to the inverse condemnation claim. These claims were disposed of in a single judgment by the Chancellor. Accordingly, the Chancellor has jurisdiction over all claims." *H.J.L., L.P.*, 1999 WL 499741, at *3.

Court has jurisdiction. *See Fry v. Emmanuel Churches of Christ, Inc.,* 839 S.W.2d 406, 409 (Tenn.Ct.App.1992). This action started out as a dispute between adjoining property owners, Plaintiff and members of the Reeves family.[13] It was not until the City of New Hope passed an ordinance to abandon the property at issue that the City was joined as a party to this action. Thereafter, the City commenced a separate action, a condemnation action in Circuit Court. The parties had already expended significant time, energy and funds to resolve their private dispute in this action before the City commenced the Circuit Court condemnation action. It was in the interest of judicial economy and expediency for this action to proceed in the Chancery Court, and as the Chancellor correctly noted, once the parties' respective property rights were determined, it would then be up to the Circuit Court to resolve the remaining issues in the condemnation proceeding.[14]

## VI.

### APPELLANTS' FAILURE TO DISCLOSE PROSPECTIVE WITNESSES

 Appellants contend the trial court erred by preventing Bonnie Shoemake and Charlie Lawson from testifying. We have determined the witnesses were properly excluded due to Appellants' failure to comply with the Scheduling Order and Rule 11.01 of the Local Rules of the Twelfth Judicial District.

Bonnie Shoemake and Charlie Lawson, the witnesses in question, were not listed on the original witness list Appellants pro-

vided to Plaintiff's counsel. The original witness list was timely provided. The witnesses listed on the original witness list were permitted to testify. Shoemake and Lawson were added to Appellants' witness list less than seventy-two hours prior to the commencement of the trial.

The Chancellor explained his decision to exclude Shoemake and Lawson stating:

[T]his case is two and a half, almost three years old. Probably more than two and a half years old. An extensive amount of time and effort has gone into it. It was a bit strange to me that the discovery of those witnesses who were so crucial and critical would be discovered at this late date and the fact that rather than a phone call was made to counsel of [sic] Thursday to advise them that these witnesses had been discovered a fax was sent on Friday afternoon within an hour and a half or two hours of closing of most offices, so I think with that being said, let's move on . . . .

A Scheduling Order was issued in accordance with Tenn. R. Civ. P. 16.01. The Order provided that "Exhibits and the names of witnesses shall be exchanged by the parties seven days or more prior to trial." [15] The trial began on Monday, March 1, 2004. Appellants timely provided a copy of their witness list on February 24, 2004; however, they did not provide the names of Shoemake and Lawson as witnesses until the afternoon of the Friday before trial. Accordingly, Appellants' disclosure of Shoemake and Lawson failed to comply with Scheduling Order.

Rule 11.01 of the Local Rules of the Courts of the Twelfth Judicial District pro-

---

**13.** Initially, Plaintiff sought equitable relief in the form of an injunction to prevent the original defendants from obstructing its access to Pine Grove Road.

**14.** The Chancery Court acknowledged that its role was not to assess damages but settle the property rights dispute.

**15.** The Scheduling Order was issued in anticipation of the first trial date, February 13, 2003, which was continued.

vides that in all civil actions, the witness lists must be provided at least seventy-two hours prior to the trial. The names of the disputed witnesses were not provided to opposing counsel in accordance with Rule 11.01. Therefore, Appellants additionally failed to comply with Local Rule 11.01.

Whether we review Appellants' issue upon the criteria of the trial court's Scheduling Order or the violation of the Local Rules of Court, under either analysis the trial court was justified to exclude Shoemake and Lawson. Accordingly, we find no error with the trial court's decision to exclude these witnesses.

 Appellants additionally complain that the Chancellor first indicated that he would permit Shoemake and Lawson to testify. Essentially, Appellants are contending the Chancellor had ruled that the witnesses would be permitted to testify and that he committed error by rescinding his earlier ruling. We find no merit with this argument because the Chancellor did nothing more than rescind an interim ruling that had not become final. "Interim rulings by the trial court are subject to modification at any time prior to entry of a final judgment." *Shepherd v. Griffin*, 929 S.W.2d 336, 343 (Tenn.Ct.App.1995).

## VII.

### MOTION IN LIMINE REGARDING WILLIAM "CORKY" CHILDS' DESIRE TO PURCHASE THE DISPUTED PROPERTY

Plaintiff filed a pre-trial Motion in Limine to exclude evidence of William "Corky" Childs' desire to purchase the disputed property from the Reeves family. Appellants opposed the motion contending the evidence was admissible, at least for a limited purpose. The Chancellor ruled in favor of Appellants, holding the evidence admissible for a limited purpose.[16] During the trial, however, the Chancellor changed his mind, ruling the evidence wholly inadmissible. Appellants contend the exclusion of this evidence was contrary to the court's earlier ruling on the Motion in Limine and that the evidence should have been admitted.

 An appellate court will not reverse a trial court's exercise of discretion in ruling on an evidentiary motion in limine unless there is an abuse of the wide discretion given the trial court on evidentiary matters. *Pullum v. Robinette*, 174 S.W.3d 124, 137 (Tenn.Ct.App.2004) (citing *Heath v. Memphis Radiological Prof'l Corp.*, 79 S.W.3d 550 (Tenn.Ct.App.2002)).

 A motion in limine is an interim ruling. *Ede v. Atrium S. OB–GYN, Inc.*, 71 Ohio St.3d 124, 642 N.E.2d 365, 366 (1994). In addition, Black's Law Dictionary defines "in limine" as "preliminary." Black's Law Dictionary (8th ed.). The nature of a motion in limine is a temporary, non-steadfast, interim ruling that is subject to modification before or during the trial.[17] An "interim order is one that adjudicates an issue preliminarily;

---

16. Specifically, the issue dealt with whether statements made by Childs, wherein he claimed to have no interest or other rights to the disputed area and offered to purchase the land, were statements against interest or an offer of settlement.

17. Courts may make "pre-introduction rulings on evidence that are conditional or provisional in nature, and, where conditions do not occur at trial, may change an earlier ruling

regarding the admissibility of the evidence." *Pullum v. Robinette*, 174 S.W.3d 124, 136–37 (Tenn.Ct.App.2004) (citing *State v. Bray*, 669 S.W.2d 684, 687 (Tenn.Crim.App.1983)). Moreover, as the *Pullum* court explained, "We know of no authority suggesting a trial court could not change an in limine ruling for other reasons in the exercise of sound discretion." *Id.*

while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do." *Hoalcraft v. Smithson*, 19 S.W.3d 822, 827 (Tenn.Ct.App.1999) (citations omitted). Until a judgment is final, the rulings of the trial court are subject to modification. *Id.*

When arriving at a determination to admit or exclude evidence, trial courts are generally "accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn.1993) (citing *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn.Ct. App.1980); Tenn. R. Evid. 401; *Austin v. City of Memphis*, 684 S.W.2d 624 (Tenn. Ct.App.1984); *Inman v. Aluminum Co. of America*, 697 S.W.2d 350 (Tenn.Ct.App. 1985)). Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Tenn. R. Evid. 103. Further, a trial court's erroneous exclusion of evidence will not require reversal if it did not affect the jury's verdict. *Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn.Ct. App.1987). Appellants failed to convince this court that the exclusion of the disputed evidence affected the jury's verdict.

## VIII.

### EVIDENCE OF THE MOTIVES OF
### THE CITY OFFICIALS

Appellants seek our review; however, they failed to raise the issue of admitting evidence of motive of the City officials in their Motion for New Trial. It is

well settled in Tennessee that appeals from jury trials must be preceded by a motion for new trial when the error alleged is based on the admission or exclusion of evidence or on jury instructions granted or refused. Tenn. R.App. P. 3(e). Failure to do so is deemed a waiver of the issue.

## IX.

### ADVISORY OPINION

Appellants erroneously contend that the trial court instructed the jury to render an advisory opinion. That is simply not what occurred.[18]

Juries are not permitted to render advisory opinions. *See State ex rel. Lewis v. State*, 208 Tenn. 534, 347 S.W.2d 47, 48 (1961); *see also Ladd by Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 94 (Tenn.Ct.App.1996) (citations omitted). The trial court, however, did not ask this jury to render an advisory opinion. Here, the trial court correctly instructed the jury to decide the rights of the parties at a time that was prior to the condemnation of the property at issue. The fact the City condemned the property prior to the jury trial does not render the verdict advisory. To the contrary, the verdict is and will be binding on the parties in this matter before the Chancery Court and the condemnation proceeding.

## X.

### JURY INSTRUCTIONS

Appellants present three challenges to the trial court's jury instructions. Appel-

---

18. The trial court instructed the jury to render its verdict based upon the interests of the parties as of June 15, 2001, the day this action commenced, as opposed to when the jury rendered its verdict. Appellants contend that verdicts must determine the rights of the par-

ties as they exist at the time of the verdict. Appellants contend the trial court erred by using the wrong date; however, Appellants failed to cite any authority to support the contention as Tenn. R.App. P. 27(a)(7) requires.

lants contend: (1) the trial court failed to instruct the jury as to the applicable clear and convincing standard of proof required for dedication and acceptance; (2) the trial court erred by failing to instruct the jury on every element of dedication and acceptance; and (3) the instruction on the scope of the right-of-way was not based on applicable Tennessee law, rather the law of Texas.

▬▬▬ We begin our review of the challenged jury instructions with the understanding that we do not measure a trial court's jury instruction against the standard of perfection. *Grissom v. Metropolitan Government of Nashville*, 817 S.W.2d 679, 685 (Tenn.Ct.App.1991) (citing *Davis v. Wilson*, 522 S.W.2d 872, 884 (Tenn.Ct. App.1974)). "Instead, we review the entire charge just as the jury would, *Memphis St. Ry. v. Wilson*, 108 Tenn. 618, 69 S.W. 265, 265 (1901); *Abbott v. American Honda Motor Co.*, 682 S.W.2d 206, 209 (Tenn.Ct.App.1984), and we will not invalidate it as long as it fairly defines the legal issues involved in the case and does not mislead the jury." *Grissom*, 817 S.W.2d at 685 (citing *Smith v. Parker*, 213 Tenn. 147, 373 S.W.2d 205, 209 (1963); *Illinois Cent. R. Co. v. Spence*, 93 Tenn. 173, 23 S.W. 211, 215 (1893)). "Under Tennessee law the jury charge will be viewed in its entirety and considered as a whole in order to determine whether the trial judge committed prejudicial error." *Otis*, 850 S.W.2d at 446 (quoting *Abbott v. American Honda Motor Co., Inc.*, 682 S.W.2d 206 (Tenn.Ct. App.1984)).

The Chancellor instructed the jury in pertinent part as follows:

### XIV.[19]

In this action, Brandy Hills has the burden of establishing by clear and convinc-

ing evidence all of the facts necessary to prove that the right-of-way of the Pine Grove Road extends to Brandy Hills' north property line and includes any area that might exist between the edge of the pavement and Brandy Hills' north property line necessary for the maintenance of the roadway and the convenience of the traveling public. The Defendants contend that the right-of-way of Pine Grove Road does not extend beyond the end of the pavement.

To prove an issue by clear and convincing evidence, Brandy Hills Estates must clearly show that there is no serious or substantial doubt about the conclusions it is attempting to prove.

You must consider all the evidence on this issue. The right-of-way of the Pine Grove Road may include the paved portion of the road, and all area necessary for the maintenance of the roadway and the convenience of the traveling public.

### XV.

▬▬▬ In contending that the area between the edge of the pavement and Brandy Hills Estates north property line is part of the right-of-way of Pine Grove Road, Brandy Hills Estates also contends that this area is part of the public road as the result of an implied dedication by the Reeves and/or their predecessors in title. Brandy Hills Estates has the burden of proving an implied dedication, which includes the intent to dedicate by the landowner and acceptance by the public, by clear and convincing evidence. The Defendants contend that Pine Grove Road does not

---

**19.** The Roman numerals refer to the paragraphs as they were enumerated in the Jury

Instructions.

extend beyond the end of the pavement. To prove an issue by clear and convincing evidence, Brandy Hills Estates must clearly show that there is no serious or substantial doubt about the conclusions it is attempting to prove.

A public road is a way open to all the people, without distinction, for passage and re-passage at their pleasure.

It has long been established that private land can be implicitly dedicated to use as a public road. When an implied dedication is claimed, the focus of the inquiry is whether the landowner intended to dedicate the land to a public use. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his/her intent. If the acts of the owner are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, then you must find that the road has been so dedicated. Among the factors which indicate an intent to dedicate, which you must consider, are the following:

1. The landowner opens a road to public travel;

2. The landowner acquiesces in the use of the road as a public road;

3. The public has used the road for an extended period of time;

4. The roadway has been maintained by the city and/or the county government.

While dedication is not dependent on duration of the use, extended use is a circumstance tending to show an intent to dedicate. You must remember that even where a passage way has been in existence for fifty years, such passage way would not become a public road unless the original landowners intended to permanently part with their property and give it to the public for a road. An intent to dedicate is inferable if you find

that the roadway has been repaired and maintained by the City of New Hope and/or Marion County, Tennessee.

The proof in this case discloses and the parties acknowledge that the Pine Grove Road is a public road up to a point, as a result of an implied dedication. In other words, there was never a deed of conveyance to Marion County and/or the City of New Hope from the Reeves, their predecessors in title, or others. The sole issue for your determination as to the issue of implied dedication is where Pine Grove Road ends and whether Brandy Hills Estates' north property line is included within the right-of-way of Pine Grove Road at any point.

. . . .

Appellants contend that the trial court failed to instruct the jury as to the applicable clear and convincing standard of proof required for dedication and acceptance. With reference to the challenge that the trial court erred by failing to instruct the jury on every element of dedication and acceptance, focusing their argument on the element of "acceptance," we note that Appellants' reliance on *Dennis v. Miceli* is misplaced. *Dennis v. Miceli,* No. M1997–00056–COA–R3–CV, 1999 WL 1072559 (Tenn.Ct.App. Nov.30, 1999). This is because *Dennis* does not stand for the limited proposition suggested by Appellants in their brief. Appellants suggest *Dennis* stands for the proposition that acceptance of dedication must be by a public official; it does not. To the contrary, it provides a formal act by public authorities "*or common use by the general public* constitutes sufficient evidence of acceptance of an owner's offer of dedication." *Dennis,* 1999 WL 1072559, at *3 (emphasis added).

■ The instruction read to the jury states in pertinent part that "Brandy Hills Estates has the burden of proving an im-

plied dedication, *which includes the intent to dedicate by the landowner and acceptance by the public,* by clear and convincing evidence." (emphasis added). The instruction correctly incorporated Plaintiff's burden to prove "dedication and acceptance by the public," and that the evidentiary burden of proof is the clear and convincing standard. As the jury instruction stated: "To prove an issue by clear and convincing evidence, Brandy Hills Estates must clearly show that there is no serious or substantial doubt about the conclusions it is attempting to prove." This comes directly from the Tennessee Pattern Jury Instructions, specifically T.P.I. 3— Civil 2.42, and correctly states the standard. *See O'Daniel v. Messier,* 905 S.W.2d 182 (Tenn.Ct.App.1995).

Appellants' third challenge pertains to the instruction on the scope of the right-of-way, which they contend was not based on Tennessee law. The pertinent portion of the jury instruction states:

> In this action, Brandy Hills has the burden of establishing by clear and convincing evidence all of the facts necessary to prove that the right-of-way of the Pine Grove Road extends to Brandy Hills' north property line and includes any area that might exist between the edge of the pavement and Brandy Hills' north property line necessary for the maintenance of the roadway and the convenience of the traveling public.

Appellants challenge the trial court's inclusion of language that refers to the "convenience for the traveling public," which is language out of a Texas case, *Robinson Water Co. v. Seay,* 545 S.W.2d 253, 260 (Tex.Civ.App.1976).[20] "[I]t is the rule that where a road is established by prescrip-

tion, the right is not limited by the beaten path used, but includes sufficient land, where reasonably available, for drainage ditches, repairs, and the convenience of the traveling public." *Id.*

■ The case on point in Tennessee is *Perkins v. Kirby,* No. 03A01–9709–CH– 00429, 1998 WL 251756, at *1 (Tenn.Ct. App. May 20, 1998). *Perkins* tells us the finder of fact "should hear such additional proof as may be available to determine the width of the right-of-way when it was created . . ., which would include all cuts, fills and drainage ditches necessary for the maintenance of the roadway located thereon." *Id.* Although we find the better practice would have been to not include the challenged language, when read as a whole, we find that the instruction fairly submitted the legal principles to the jury. There is no reversible error if the instruction fairly submitted the applicable legal principles to the jury. *Grissom,* 817 S.W.2d at 685. Accordingly, we find no error with the jury instruction.

## XI.

### VERDICT CONTRARY TO THE WEIGHT OF THE EVIDENCE

Appellants contend the jury's verdict is contrary to the weight of the evidence. Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict. Tenn. R.App. P. 13(d). The issue presented requires that we determine whether there is material evidence to support the jury's verdict. *See* Tenn. R.App. P. 13(d); *see also Whaley v. Perkins,* 197 S.W.3d 665, 671 (Tenn.2006). Having reviewed the evidence we find the record contains more

---

**20.** In the Plaintiff's Proposed Jury Instructions, the Texas case is cited for the convenience of the court and counsel. However, during the February 25, 2004, hearing, there was debate as to whether the reference to the Texas case law was to be left in the jury charge.

than sufficient evidence to constitute substantial and material evidence upon which the jury based its decision.[21]

## XII.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Appellants.

---

**21.** Under this same heading on the last page of their brief, Appellants also contend no evidence concerning the City's ordinances and resolutions was introduced during the trial; therefore, the trial court erred in instructing the jury they could consider the ordinances. Alternatively, they contend evidence was introduced that was not relevant. Although the factual assertions are wholly contradictory, we find the argument was not properly presented as required by Tenn. R.App. P. 27(a)(7). Accordingly, we find it was waived by Appellants.