IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Brief September 13, 2012


ANTONIO J. BULLARD
v.
TURNEY CENTER DISCIPLINARY BOARD, DERRICK D.
SCHOFIELD, BRUCE WESTBROOKS, JACK MIDDLETON, AND
JOSH PASCHALL


**Appeal from the Hickman County Chancery Court**
**No. 11-CV-4446   Timothy L. Easter, Judge**

_____

**No. M2012-00046-COA-R3-CV - Filed December 18, 2012**

_____


This appeal involves an inmate's petition for common law writ of certiorari.  The petitioner inmate was convicted of disciplinary offenses by the respondent prison disciplinary board. The inmate filed a petition for common law writ of certiorari, seeking judicial review of the convictions for the disciplinary offenses.  The trial court found that the inmate's petition was not timely filed, and therefore that the chancery court lacked subject matter jurisdiction to hear the petition.  We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**


HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.


Petitioner/Appellant Antonio J. Bullard, Only, Tennessee, self-represented


Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Associate Solicitor General, and Lee Pope, Assistant Attorney General, Nashville Tennessee, for the Respondent/Appellees Turney Center Disciplinary Board, Derrick D. Schofield, Bruce Westbrooks, Jack Middleton, and Josh Paschall

FACTS AND PROCEEDINGS BELOW

As this is an appeal from the grant of a motion to dismiss, we recite the facts as alleged in the petition for common law writ of certiorari and in documents filed in the record in connection with the motion to dismiss.

Petitioner/Appellant Antonio J. Bullard is an inmate in the custody of the Tennessee Department of Correction, currently incarcerated at Turney Center Industrial Complex ("Turney Center") in Only, Tennessee. In January 2011, the Respondent/Appellee Turney Center Disciplinary Board ("Board") summoned Bullard to appear before it to answer to charges of conspiracy to violate state law and possession/use of a cellular phone. Bullard pled not guilty. The Board later found Bullard guilty of the offenses. It fined Bullard $5, sentenced him to 30 days of punitive segregation, and suspended his visitation privileges for six months.

Bullard appealed, arguing among other things that the Board had acted arbitrarily based on a lack of evidence and had denied Bullard his right to due process. The Warden of Turney Center, Respondent/Appellee Bruce Westbrooks ("Warden"), considered Bullard's arguments and affirmed the Board's decision. Bullard then appealed the Warden's decision to the Commissioner of the Tennessee Department of Corrections, Respondent/Appellee Derrick Schofield ("Commissioner"). In this appeal, Bullard argued that the Warden had incorrectly affirmed the Board's decision and contended that the Warden was merely "doing the rubbery stamping" of inmates' appeals. The Commissioner upheld the Warden's decision. On Bullard's disciplinary report, the Commissioner handwrote: "I concur with the Warden's affirmation of the guilty finding against you and find no due process violations." The Commissioner's decision was entered on March 1, 2011.

Eighty-five days later, on May 25, 2011, Bullard filed a petition for common law writ of certiorari in the Chancery Court for Hickman County, Tennessee, challenging the Board's

---

[1]Rule 10. Memorandum Opinion

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

actions against him. Bullard attached several exhibits to his petition, including a notarized verification and affidavit, both dated April 29, 2011. The record also contains an undated unsworn letter purportedly signed by the Library Supervisor for Turney Center, stating:

> To Whom It May Concern,
>
> > As of Friday April 29, 2011 until Wednesday May 11, 2011 the Institution was on lockdown and there was no inmate movement, therefore, there was no access to the Law Library or access to the courts.
>
> C.C.O. Ivie Owens, Library Supervisor

The record also includes Bullard's prison trust fund account certificate, notarized on May 17, 2011, which appears to have been either attached to Bullard's petition or filed along with it.

In response to Bullard's petition, the Board filed a motion to dismiss pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure. The motion sought dismissal of Bullard's petition on the basis that it was not filed within the 60-day limitations period set forth in Tennessee Code Annotated § 27-9-102. As a result, the Board's motion alleged the trial court did not have subject matter jurisdiction to adjudicate the petition, and dismissal was mandated. The Board argued that Bullard could not rely on the "prisoner mailbox rule," Rule 5.06 of the Tennessee Rules of Civil Procedure, because his trust fund account statement was not notarized until May 17, 2011, demonstrating that Bullard did not give his petition to the appropriate person at Turney Center until May 17 at the earliest. Bullard filed a response to the Board's motion to dismiss, arguing that his petition was timely filed, referencing a letter that is not in the appellate record. The Board filed a reply arguing that the trial court should not consider the letter referenced by Bullard in his response and insisting that the trial court lost subject matter jurisdiction over the matter on April 29, 2011, 60 days after the final administrative decision on Bullard's appeal.

On August 2, 2011, the trial court entered an order dismissing Bullard's petition. The trial court held that Bullard's petition was not timely filed.

Over thirty days later, on September 6, 2011, Bullard filed a motion to alter or amend the trial court's order, asserting that an emergency lockdown of the entire prison facility prevented him from filing his petition within the statutory limitations period. Bullard claimed that he gave his petition "to the proper authorities immediately after his release from lock down."

Bullard attached an affidavit by a prison library aide in support of his motion to alter or amend.[2]

On October 12, 2011, the trial court entered an order denying Bullard's motion to alter and amend. Bullard now appeals.

### ISSUE ON APPEAL AND STANDARD OF REVIEW

On appeal, Bullard argues that the trial court erred in holding that his petition for a common law writ of certiorari was not timely filed, and thus that the trial court lacked jurisdiction to hear it.

---

[2]The affidavit by Joe Clark Mitchell, a "legal assistant" at the Turney Center library, stated:

> 4. On Friday night the 29th[] day of April 2011 affiant summoned the petitioner/Mr. Bullard to come to the law library in order to pick up his completed petition for writ of certiorari. The affiant then gave Mr. Bullard the required affidavits to be notarized for which the affiant's supervisor Ivie Owens is a notary.
> 5. Immediately afterwards the affiant had to go up to the High Security Area (HSA) to assist some of the . . . inmates. At that time affiant informed the petitioner of these plans with instructions for him to get all of his affidavits notarized while he was gone and as soon as affiant returns from HSA he would show Mr. Bullard where to sign and date his petition for mailing.
> 6. However as luck would have it before the affiant could return to the library from (HSA) to give Mr. Bullard his completed petition, an emergency locked [sic] was announced due to the stabbing of a female correction officer and every inmate was immediately escorted to his assigned housing area. Affiant did not again see Mr. Bullard until the 11th day of May 2011.
> 7. Inmate Antonio J. Bullard's petition for writ of certiorari was laying on the affiant[']s desk from Friday April 29th, 2011 through Wednesday May 11th, 2011 at which time [everyone] was let off lock down.
> 8. On Wednesday May 11th, 2011 the day that affiant came off of lock down he [immediately] went to the law library and retrieved Mr. Bullard[']s petition off of his desk, had his supervisor to call Mr. Bullard to the Library.
> 9. Mr. Bullard did in fact come to the library on 5/11/11 and retrieved his Petition from the affiant, enclosed his affidavits that he had gotten notarized by Mrs. Ivie Owens on the night of April 29th, 2011.
> 10. Whereas Mr. Bullard then took his petition to the mail-room officer for mailing.
> 11. Had it not been for the horrible stabbing of the officer and subsequent full lock down of the institution from April 29, 2011 through May 11th, 2011 the petitioner would have had his petition in hand to mail. But due to the aforementioned circumstances the affiant could not give Mr. Bullard his petition to him on the night of April 29, 2011 in order for timely filing.

Subject matter jurisdiction presents a question of law. *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2011 WL 5517036, at *3; 2011 Tenn. App. LEXIS 613, at *11 (Tenn. Ct. App. Nov. 14, 2011). We review the trial court's conclusions of law *de novo*, affording them no presumption of correctness. *Mimms v. Mimms*, 234 S.W.3d 634, 637 (Tenn. Ct. App. 2007) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993)).

## ANALYSIS

"Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy." *Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 639 (Tenn. 1996) (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). Subject matter jurisdiction pertains "to the right of the court to adjudicate, or to make an award through the remedies provided by law upon facts proved or admitted in favor of, or against, persons who are brought before the court under sanction of law." *Brandy Hills Estates, LLC v. Reeves*, 237 S.W.3d 307, 314-15 (Tenn. Ct. App. 2006). Unless the trial court below had subject matter jurisdiction, it was without authority to adjudicate Bullard's petition.

A petition for a common law writ of certiorari is the proper mechanism for challenging a prison disciplinary action. *Richmond v. Tenn. Dept. of Corrections,* No. M2009-01276-COA-R3-CV, 2010 WL 1730144, at *3 (Tenn. Ct. App. Apr. 29, 2010). Tennessee Code Annotated § 27-9-102 requires that a petition for writ of certiorari be filed within 60 days from the entry of the appealed judgment. Failure to file the petition within this time limit results in the challenged judgment becoming final, which deprives a reviewing court of subject matter jurisdiction to adjudicate the matter. *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 379 (Tenn. Ct. App. 2003). Therefore, "[i]f the petition for certiorari shows on its face that it was filed beyond the sixty-day statute of limitations provided by Tennessee Code Annotated § 27-9-102 this defect is fatal to subject matter jurisdiction and the motion [to dismiss] is well taken." *Gore*, 132 S.W.3d at 374.

On appeal, Bullard argues that the limitations period in Section 27-9-102 should have been tolled because the detention center in which he is housed was placed on "lock-down from April 29, 2011 through May 11, 2011," and this prevented him from delivering his petition to the prison mailbox by the statutory deadline. Rule 5.06 of the Tennessee Rules of Civil Procedure, commonly referred to as the "prisoner mailbox rule," states in relevant part:

> If papers required or permitted to be filed pursuant to the rules of civil procedure are prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and are not received by the clerk of the court until after the

time fixed for filing, filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing. This provision shall also apply to service of paper by such litigants pursuant to the rules of civil procedure. "Correctional facility" shall include a prison, jail, county workhouse or similar institution in which the pro se litigant is incarcerated. Should timeliness of filing or service become an issue, the burden is on the pro se litigant to establish compliance with this provision.

Tenn. R. Civ. P. 5.06 (2012). Thus, the Rule states expressly that the burden is on the *pro se* litigant to establish compliance with this provision.

On appeal, Bullard references the U.S. Supreme Court case of ***Houston v. Lack***, 108 S. Ct. 2382 (1988). Tennessee courts have cited this case, which recognizes that *pro se* incarcerated litigants sometimes face unique circumstances:

> In the analogous case of ***Houston v. Lack***, 487 U.S. 266, 270-271, 108 S. Ct. 2379, 2382, 101 L.Ed.2d 245 (1988), the United States Supreme Court explained the purpose for allowing notices of *pro se* prisoners to be deemed "filed" when delivered to proper prison authorities for mailing:
>
>> The situation of prisoners seeking to appeal is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal . . . Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly in the hands of the United States Postal Services (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate [either] excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions, nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se*

> prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay . . . . Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities. . . .

"In other words, the jailer is in effect the clerk of the [court]." ***Houston v. Lack***, 487 U.S. 266 at 270, 108 S. Ct. 2379, 101 L. Ed. 2d 245. In the present case, the prison officials at the Wayne County Boot Camp served as the "clerk of the court." Although the Appellant mistakenly addressed the envelope containing his *pro se* petition to the wrong city, it is clear that his intention was to timely file the petition with the Robertson County Circuit Court Clerk. He accomplished this by delivering the petition to the prison authorities on April 14, 1999. Tenn. Sup. Ct. R. 28, § 2(G); Tenn. R. Crim. P. 49(c). We find no case law or other authority to support a different conclusion. As a *pro se* prisoner, the Appellant had no control over the situation, lacked freedom to pursue other means, and had no mechanism by which to confirm that the Robertson County Circuit Court Clerk received his petition. With such a restraint, we cannot say that the Appellant's error precludes him from seeking relief under the Act. Accordingly, we find that the petition was timely filed.

***Seagroves v. State***, No. M2009-01890-COA-R3-CV, 2010 WL 3059134, at *3-4; 2010 Tenn. App. LEXIS 502, at *9-11 (Tenn. Ct. App. Aug. 4, 2010) (quoting ***Paul v. State***, 75 S.W.3d 926, 928-29 (Tenn. Crim. App. 2001)).

We consider first the motion to dismiss as presented to the trial court. Apparently anticipating an argument that his petition was not timely filed, along with the petition, Bullard filed a copy of an unsworn letter, purportedly on Department of Corrections stationery, asserting that the Turney Center was on "lockdown" from April 29, 2011 until May 11, 2011. Bullard's response to the Board's motion to dismiss references an additional letter that is not contained in the appellate record. Assuming, without deciding, that an institutional lockdown would toll the 60-day limitations period in Section 27-9-102, we must find that Bullard did not meet his burden of showing that such a lockdown in fact occurred. Moreover, we note that if the alleged lockdown was from April 29 until May 11, 2011, Bullard did not meet his burden of showing that he delivered the petition and the accompanying papers to the appropriate individual at the correctional facility promptly after the lockdown was lifted. Under these circumstances, we cannot find that Bullard has carried his burden of showing that he complied with Rule 5.06 or that the limitations period in

Section 27-9-102 should be tolled because of the alleged lockdown. ***See Powers v. Smith***, No. W2000-02290-COA-R3-CV, 2001 WL 1042142, at \*2; 2001 Tenn. App. LEXIS 675, at \*5-6 (Tenn. Ct. App. Sept. 4, 2001) (finding that an unidentified letter documenting an "institutional lockdown" was insufficient to toll the 60-day mandatory period for appealing the disciplinary decision; therefore, the trial court was without jurisdiction to hear the inmate's petition). Consequently, we cannot conclude that the trial court erred in granting the Board's motion to dismiss.

Thereafter, Bullard filed a motion to alter or amend, to which he attaches additional materials, including an affidavit more fully explaining the status of Bullard's filing when the alleged lockdown occurred, and Bullard's actions when the lockdown was lifted. Bullard does not explain why this affidavit could not have been submitted to the trial court in connection with its consideration of the motion to dismiss, rather than submitting it with a motion to alter or amend.

Bullard's post-judgment motion was not filed within the 30-day limit for filing a motion to alter or amend pursuant to Rule 59 of the Tennessee Rules of Civil Procedure. ***See*** Tenn. R. Civ. P. 59.02. Therefore, we treat Bullard's motion as a motion for relief from a final judgment under Tenn. R. Civ. P. 60, which may be filed more than 30 days after judgment is entered. ***See*** Tenn. R. Civ. P. 60.02 ("The motion shall be made within a reasonable time"). The grounds for relief under Rule 60 are limited.[3] ***See id.*** Bullard's motion does not cite a basis for relief that satisfies the grounds listed in the Rule.

Our standard of review for the denial of a Rule 60 motion for relief from judgment is considerably higher than our standard of review for the granting of a motion to dismiss; the standard of review for the denial of a Rule 60 motion is abuse of the trial court's discretion. ***Discover Bank v. Morgan***, 363 S.W.3d 479, 487 (Tenn. 2012) (citing ***Henry v. Goins***, 104 S.W.3d 475, 479 (Tenn. 2003)). After our review of the appellate record, we cannot conclude that the trial court abused its discretion in declining to grant Bullard's post-judgment motion.

---

[3]Under Rule 60.02, a court may relieve a party or the party's legal representative from a final judgment, order, or proceeding under Rule 60.02 only for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. ***See*** Tenn. R. Civ. P. 60.02.

**CONCLUSION**

The decision of the trial court is affirmed. Costs on appeal are assessed against Petitioner/Appellant Antonio J. Bullard, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE