# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
December 19, 2013 Session

## CINDY WHEATLEY, ET AL. V. ROBERT J. MARTINEAU, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 111660II      Carol L. McCoy, Chancellor**

---

**No. M2013-01704-COA-R3-CV - Filed April 15, 2014**

---

This appeal arises from a certiorari proceeding instituted in December of 2011 in which owners of property adjoining a landfill sought review of the Commissioner of the Tennessee Department of Environment and Conservation's decision in October 2011 to issue a modification of a permit to operate a Class II disposal facility which was issued in 2008. The trial court held that the approval of the modification in 2011 was invalid because it was grounded on the 2008 permit, which the court also held to be invalidly approved; the court ordered the Commissioner to take action to void the 2008 permit and 2011 modification. The Commissioner and landfill owner appeal the holding that the 2008 permit and 2011 modification are null and void; adjoining landowners appeal the denial of their request for injunctive relief and ask this court to decide two issues which the trial court did not address. We conclude that the trial court lacked subject matter jurisdiction to review the issuance of the 2008 permit and to declare it void; that the Commissioner's authority to approve the 2011 modification was not conditioned on the expansion project being approved by the city and county legislative bodies; that the landfill owner was not required to submit the 2011 modification application to the regional solid waste board prior to securing the Commissioner's approval; and that the Commissioner had no duty to require that the material to be placed in the landfill be determined not hazardous prior to approving the modification. Accordingly, we reverse the judgment of the trial court and dismiss the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Petition Dismissed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M. S., P. J., and ANDY D. BENNETT, J., joined.

W. Scott Sims, Jason W. Callen, Michael K. Stagg, Lauran M. Sturm, Nashville, Tennessee, for the appellant, Environmental Waste Solutions, LLC.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Wilson S. Buntin, Assistant Attorney General, Nashville, Tennessee, for the appellant, Robert J. Martineau, Jr., Commissioner, Tennessee Department of Environment and Conservation.

W. David Bridgers and J. Isaac Sanders, Nashville, Tennessee, for the appellee, Benton County, Tennessee.

Geoffrey A. Lindley, Jackson, Tennessee, for the appellee, City of Camden, Tennessee.

Elizabeth L. Murphy, Nashville, Tennessee, for the appellees, Cindy Wheatley, Johnny Wheatley, Joe Whitworth, Michael Melton, and Mark Totty.

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

This appeal finds its genesis in a series of landfill permits and modifications issued by the Tennessee Department of Environment and Conservation ("TDEC") for a landfill located in the city of Camden in Benton County.  On July 11, 2000, TDEC first issued a solid waste permit to Custom Tire and Recycle ("CTR") allowing for the disposal of Class IV automotive tire waste on the property.[1]  In December of 2008, TDEC issued a Class II permit to CTR authorizing the disposal of coal ash, construction/demolition waste, landscaping and land clearing waste, and shredded automotive tires.[2]

---

[1]  "Class IV Disposal Facility refers to a landfill which is used or to be used for the disposal of demolition/construction wastes, shredded automotive tires, and certain wastes having similar characteristics and approved in writing by the Department."  Tenn. Comp. R. & Regs. 0400-11-01-.01(3)(d).

[2]

   Class II Disposal Facility refers to a landfill which receives waste which is generated by one or more industrial or manufacturing plants and is used or to be used for the disposal of solid waste generated by such plants, which may include industrial wastes, commercial wastes, institutional wastes, farming wastes, bulky wastes, landscaping and land clearing wastes, construction/demolition wastes, and shredded automotive tires.  Additionally a Class II

2

Environmental Waste Solutions, LLC ("EWS") acquired ownership of CTR's landfill and its Class II permit on October 5, 2009; ten days later, TDEC approved a request from EWS for a minor modification of the permit which would allow EWS to accept secondary aluminum smelter waste as a special waste on a portion of the landfill property.[3]  On March 17, 2011, EWS submitted a permit modification package requesting approval from TDEC to accept secondary aluminum smelter waste on the remainder of the land.  On March 24 EWS received a letter from TDEC's Division of Solid Waste Management advising that the March 17 package did not clearly state the reason for the permit modification request, that the request would be treated as a major modification, and that EWS would need to obtain local approval before going forward.  On May 5 EWS received a letter from the Director of TDEC's Division of Solid Waste Management which stated that EWS would not need to obtain local approval.  Providing a basis for this reversal of position, the letter stated:

> [TDEC] reviewed the actions the City of Camden and Benton County took regarding application of [the Jackson Law] for this landfill.  The City of Camden approved the current EWS landfill site (19 acre footprint . . . ) on September 20, 2004.  Benton County approved the current EWS site (19 acre footprint . . . ) on October 12, 2004.  From our review of the two letters and T.C.A. 68-211-701 et seq., [TDEC] believes that the City and County approved the landfill as a whole in 2004.  The current request from EWS to [TDEC] to construct the next disposal cell at the landfill does not increase the landfill footprint (19 acres) or the landfill capacity (6,3000,000 yd [cubed]).  Given this, [TDEC] believes the applicant has received the necessary approvals required to proceed in the permitting process.[4]

The letter further provided that the application was considered to be a major permit modification "subject [to] public notice and public comment."  On July 26 TDEC held public hearings in Camden, and on October 5, issued a permit which allowed for the

---

disposal facility may also serve as a monofill for ash disposal from the incineration of municipal solid waste.

Tenn. Comp. R. & Regs. 0400-11-01-.01(3)(b).

[3] "'Special Wastes' are solid wastes that are either difficult or dangerous to manage and may include sludges, bulky wastes, pesticide wastes, medical wastes, industrial wastes, hazardous wastes which are not subject to regulations under Rules 0400-12-01-.03 through 0400-12-01-.07, liquid wastes, friable asbestos wastes, and combustion wastes."  Tenn. Comp. R. & Regs. 0400-11-01-.01

[4] TDEC's letter incorrectly identified the acreage of the landfill; the parties do not dispute, however, that the 2011 modification did not expand the acreage or capacity of the landfill.

"[c]onstruction, operation, closure, and post-closure care of a Class II disposal facility . . . for the disposal of secondary Aluminum smelter wastes, shredded automotive tires, construction/demolition waste, waste derived from coal combustion, and/or certain special wastes approved in writing by the Department."

On December 2, 2011, landowners and residents who lived near the landfill ("Petitioners") filed a Petition for Writ of Certiorari and Supersedeas contending that Robert Martineau, Commissioner of TDEC, failed to comply with Tenn. Code Ann. § 68-211-701 to -707 (the "Jackson Law") in issuing the 2008 and 2011 permits[5]; Petitioners requested that a "Writ of Certiorari be heard," that "the Court order and declare the issuance of the permit void and or contrary to law," and that "a Writ of Supersedeas issue suspending the permit, and or injunctive relief to preclude use of the permit." The court issued the writ and ordered that a complete transcript and record regarding the 2011 permit be prepared and forwarded to the Clerk and Master; the Commissioner filed the record on April 13, 2012. Following the filing of the record, the parties filed numerous pleadings, which resulted in the dismissal of some of the claims.[6]

---

[5] The Jackson Law details the manner in which landfills are to be built and expanded in Tennessee. *Tenn. Waste Movers v. Loudon Cnty.*, 160 S.W.3d 517 (Tenn. 2005). Our Supreme Court has described the procedure required under the Jackson Law as follows:

> [The Jackson Law] permits counties and cities to opt into its provisions by a two-thirds vote of the appropriate legislative body. *See* Tenn. Code Ann. § 68-211-707(a). Once a county or a city opts to be covered by the Jackson Law, its citizens are entitled to public notice and a hearing regarding a proposed landfill. *See* Tenn. Code Ann. § 68-211-703. The Jackson Law also requires the county or city to "approve or disapprove the proposed new construction for solid waste disposal by landfilling or solid waste processing by landfilling," *see* Tenn. Code Ann. § 68-211-704(a), based on the eight criteria in Tenn. Code Ann. § 68-211-704(b).

*Brundage v. Cumberland Cnty.*, 357 S.W.3d 361 (Tenn. 2011) (footnotes omitted).

[6] On May 29, 2012, the Petitioners amended their petition, in part, to add EWS as an interested party and to seek declaratory judgment that the permit and modification were void. In due course, the Commissioner moved to dismiss the claim for declaratory judgment, and EWS separately moved to dismiss all claims. On July 12, Petitioners filed a petition seeking a temporary injunction against "the use of the permit and any further disposal of aluminum smelter waste . . . pending the disposition of this case on the merits." The Commissioner and EWS filed responses opposing the issuance of the injunction. Pursuant to an agreed order, Petitioners filed the Second Amended Petition For Writ of Certiorari and Supersedeas and Writ of Mandamus and Declaratory Judgment on August 22, in which they requested the following relief:

> 1. That Writ of Certiorari be heard pursuant to Tenn. Code Ann. § 28-101, Declaratory Judgment as alleged and a Writ of Mandamus;
> * * *

4

The court heard argument on the certiorari review on January 24, 2013 at which Petitioners raised three issues: (1) whether the Commissioner had the authority to issue the permit under Tenn. Code Ann. § 68-211-105(h); (2) whether TDEC's failure to characterize aluminum smelter waste as hazardous waste was arbitrary; and (3) whether the Commissioner had the authority to issue the permit without the approval of the Benton County Regional Solid Waste Board. On April 22 the court issued a Memorandum and Order holding that the record lacked substantial or material evidence to support the 2011 and 2008 approvals of the permit modifications for the landfill making the decision to grant the modification arbitrary. The court also held that the Commissioner exceeded his authority in approving the permit modifications and declared null and void the decision of the Commissioner to approve the 2008 permit and 2011 modification. The court directed the Commissioner to "take appropriate action to void the permit modifications." The court did not rule on Petitioners' second and third issues.

On May 15, 2013, the Commissioner and EWS each filed a motion to alter or amend.[7] On June 10, the court entered an order which granted the Commissioner's motion in part, denied it in part, and reserved ruling on the issue of subject matter jurisdiction to review the 2008 permit pending additional briefing regarding the issue. On July 11, the court declined to further alter or amend its April 22 order; that order has been stayed pending appeal.

## II.    ISSUES ON APPEAL

The Commissioner appeals, articulating the following issues:

---

4. That the Court order and declare the issuance of the permit void and or contrary to law;
5. That a Writ of Supersedeas issue suspending the permit, and or injunctive relief to preclude use of the permit;
6. The Court craft extraordinary and appropriate relief to address the existing fill, but terminate the permit expansion to preclude ongoing unlawful activities unless or until the mandatory requirements of applicable statutes have been met as pled;

On September 24, the court granted the Commissioner's partial motion to dismiss, dismissing all claims made by Petitioners against the Commissioner except those challenging the 2011 modification pursuant to the common law writ of certiorari. On October 23, the court granted EWS's motion to dismiss; in a separate order, the court granted EWS's motion to participate as *amicus curiae* in the proceedings. On November 13 the court denied the petition for temporary injunction and writ of supersedeas. Benton County and the City of Camden moved to intervene in the proceedings, and an agreed order was entered granting the motion.

[7] EWS filed a motion to intervene on May 15. Although the court initially denied EWS's motion to intervene on June 12, it later granted EWS's motion to allow EWS to appeal the court's final ruling.

1. Did the chancery court err in invalidating a 2011 modification to an existing solid-waste permit when such modification did not need "Jackson Law" approval because such modification did not result in an expansion of the footprint of the landfill?

2. Did the chancery court lack subject matter jurisdiction to review and invalidate a 2008 solid-waste permit in the context of a challenge to the 2011 modification to such permit when no petition for a common-law writ of certiorari was filed within 60 days of the issuance of the 2008 permit, as is required in certiorari actions by Tenn. Code Ann. § 27-9-102?

3. Even if the chancery court did have jurisdiction to review the 2008 permit, did the chancery court err by finding that a 2004 letter from the City of Camden was not sufficient evidence of the city's approval of the landfill pursuant to the "Jackson Law," Tenn. Code Ann. §§ 68-211-701 to -707, where the Commissioner of the Tennessee Department of Environment and Conservation could have reasonably relied upon the letter in issuing the 2008 permit?

EWS also appeals, and articulates the following additional issues:

1. Whether the trial court erred in invalidating the 2008 permit despite appellant's substantial good faith reliance upon it and the substantial hardship that invalidating the permit would impose upon appellant.

2. Whether the trial court erred in reviewing the validity of the 2008 permit given that petitioners asserted no writ of certiorari claim regarding the issuance of that permit.

Petitioners also appeal, raising the following issues:

1. Whether the trial court erred in denying Petitioners' injunction request by concluding that a writ of certiorari is not an "appropriate' case for injunction, and there was nothing for the court to enjoin;

2. Whether the court erred by failing to address the second grounds for review, specifically that TDEC violated T.C.A. § 68-211-102(b) by allowing hazardous waste in a solid waste site after admitting the waste exhibited several hazardous characteristics;

3. Whether the court erred by failing to address Petitioners' third grounds for review, specifically that TDEC exceeded its jurisdiction by failing to adhere to T.C.A. § 68-211-814(b)(2)(A) which required the Regional

6

Solid Waste Board's approval of construction for the additional 35 acres before submittal to the Commissioner.

### III.   STANDARD OF REVIEW

Common law writ of certiorari is the appropriate way to obtain review of the issuance of a solid waste permit. *Town of Dandridge v. Tenn. Dep't of Env't & Conservation*, No. 01-A-019110CV00391, 1992 WL 12189, at *2 (Tenn. Ct. App. Jan. 29, 1992). Under the limited standard of review in common law writ of certiorari proceedings, courts review a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *Petition of Gant*, 937 S.W.2d 842, 844–45 (Tenn. 1996) (quoting *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990)).

Our review of the evidence on appeal can be no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 167 (Tenn. Ct. App. 2009). Application of a statute or ordinance to the facts is a question of law that is properly addressed to the courts. *Sanifill of Tenn., Inc. v. Tenn. Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995). As to issues of law, our review is *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

### IV.   ISSUES RAISED BY EWS & THE COMMISSIONER

#### A.   Subject Matter Jurisdiction[8]

The petition seeking review of the 2011 modification was filed on December 2, 2011. EWS and the Commissioner contend that the trial court did not have subject matter jurisdiction to determine whether the 2008 permit was issued in compliance with the Jackson

---

[8] The petition alleged that the Commissioner exceeded the limits placed on his authority by Tenn. Code Ann. § 68-211-105(h) and the Jackson Law; although this case involves a tangential question of whether there was compliance with the Jackson Law, this is not an appeal of a legislative body's determination under the Jackson Law. Thus, Tenn. Code Ann. § 68-211-704(c), which provides for "de novo review before the chancery court for the county in which the landfill is proposed to be located," is inapplicable to the present case.

7

Law, and instead, the court could only review the decision approving the 2011 modification to the 2008 permit. We agree.

Common law certiorari is provided for in Tenn. Code Ann. § 27-8-101:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Tenn. Code Ann. § 27-9-102 requires petitions for writs of certiorari to be filed "within sixty (60) days from the entry of the order or judgment." Failure to comply with this requirement results in the order or judgment becoming final and deprives the courts of jurisdiction. *Residents Against Indust. Landfill Expansion, Inc. v. Tenn. Dep't of Env't & Conservation*, No. 01A01-9507-CH-00311, 1998 WL 68929 (Tenn. Ct. App. Feb. 20, 1998). Thus, complying with Tenn. Code Ann. § 27-9-102 is mandatory and jurisdictional. *Id.* (citing *Thandiwe v. Traughber*, 909 S.W.2d 802, 804 (Tenn. Ct. App. 1994)).[9]

Inasmuch as the petition was filed within 60 days of the issuance of the 2011 modification, the court had subject matter jurisdiction to review that action; that review, however, does not extend to allow the court to examine TDEC's authority to issue the 2008 permit. The issuance of the 2008 permit was complete at that time and no review of that decision was sought; once the 60 day time to seek such review expired, the decision to issue the permit became final. Thus, the trial court was without subject matter jurisdiction to review the decision of the Commissioner to issue the 2008 permit.

## B.    2011 Modification and the Jackson Law

Pursuant to Tenn. Code Ann. § 68-211-101 *et seq.* ("Tennessee Solid Waste Disposal Act"), TDEC is charged with the "general supervision over the construction of solid waste

---

[9] "Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). Subject matter jurisdiction pertains "to the right of the court to adjudicate, or to make an award through the remedies provided by law upon facts proved or admitted in favor of, or against, persons who are brought before the court under sanction of law." *Richmond v. Tenn. Dep't Of Corr.*, M2009-01276-COA-R3-CV, 2010 WL 1730144 (Tenn. Ct. App. Apr. 29, 2010) (quoting *Brandy Hills Estates, LLC v. Reeves*, 237 S.W.3d 307, 314–15 (Tenn. Ct. App. 2006)).

processing facilities and disposal facilities or sites throughout the state."[10]  Tenn. Code Ann. § 68-211-105.  The Commissioner and TDEC's authority is limited, however, where the city or county has opted into the Jackson Law.  *See Profill Dev., Inc. v. Dills*, 960 S.W.2d 17, 32 (Tenn. Ct. App. 1997).  The question remains as to what limit, if any, Tenn. Code Ann. § 68-211-105(h)[11] placed on the Commissioner's authority to issue the 2011 modification, and whether the Commissioner had a duty to ensure that the 2000 and 2008 permits were issued in compliance with the Jackson Law.

Tenn. Code Ann. § 68-211-105(h) prohibits the Commissioner from approving "any construction for any new landfill for solid waste disposal" where the project has not been approved locally in accordance with the Jackson Law.  The term "new landfill"—as it is used in Tenn. Code Ann. § 68-211-105(h)—is defined in Tenn. Comp. R. & Regs. 0400-11-01-.02 to include a new landfill, a lateral expansion of an existing landfill, and a change in classification of an existing landfill.[12]  The 2011 modification did not fall under this definition because the modification did not constitute a new landfill, did not expand the existing footprint, and did not change the existing Class II classification.[13]  Thus, Tenn. Code

---

[10]  The procedures and requirements that must be met in order to be granted a permit to operate a solid waste storage, processing, or disposal facility are set forth at Tenn. Comp. R. & Regs. 0400-11-01-.02.

[11]  Tenn. Code Ann. § 68-211-105(h) provides:

The commissioner shall not review or approve any construction for any new landfill for solid waste disposal or for solid waste processing in any county or municipality which has adopted §§ 68-211-701--68-211-704 and § 68-211-707 [the Jackson Law] until such construction has been approved in accordance with such sections.

[12]  Tenn. Comp. R. & Regs. 0400-11-01-.02(c)2 provides:

For purposes of T.C.A. §68-211-105(h), a "new landfill for solid waste disposal" or a "new solid waste landfill" means any of the following:
(I) A solid waste landfill that received a tentative decision from the department to issue a permit after June 2, 1989 (the date the Jackson Law went into effect);
(II) A lateral expansion (a modification that expands the previously permitted footprint) of a solid waste landfill described in item (I) of this part; and
(III) A solid waste landfill described in item (I) of this part whose owner or operator proposes to accept waste that would require a change of the landfill's classification under this chapter to a classification with higher standards (i.e., from a Class III/IV landfill to a Class I or II landfill, or from a Class II to a Class I).

[13]  The Petitioners do not contest that the 2011 modification does not fall into these three categories. In their brief, the Petitioners state:

No party contended, and the trial court did not find, that the 2011 modification required

Ann. § 68-211-105(h) did not apply to the 2011 modification, and the trial court erred in invalidating the modification.[14]

## V.   ISSUES RAISED BY THE PETITIONERS

The Petitioners contend that the trial court erred in failing to address the additional issues with respect to the 2011 modification. While the trial court did not specifically state the reasons it did not rule on those issues, it is apparent that it considered them pretermitted by the ruling on the Petitioner's first issue or did not find them to be persuasive. Because the issues relate to the Commissioner's responsibilities with respect to the modification, we will address them.

### A.      Tenn. Code Ann. § 68-211-814(b)(2)

The Petitioners first assert that Tenn. Code Ann. § 68-211-814(b)(2)(A) requires that a permit for construction be submitted to the regional solid waste board before the Commissioner may approve it; they contend that the 2011 modification included construction

---------------------------------------

> another Jackson Law, or 'Local Approval Law' process. The 2008 permit triggered the Jackson Law; the 2011 modification itself did not. The 2008 permit contemplated a 35-acre expansion whereas the 2011 modification approved a new construction design for the 35 acres.

(Footnote omitted.)

[14] The trial court erred also in holding that the Commissioner, in granting a modification, had a duty to "verify in some fashion" that previously issued permits received the necessary approval under the Jackson Law; the statute places no such duty on the Commissioner. Moreover, in *Siler v. Siler* our Supreme Court applied the following rule from 22 Corpus Juris 130, which the court stated was "supported by decisions from the Supreme Court of the United States, and from practically all of the state courts":

> There is always a presumption that official acts or duties have been properly performed, and in general it is to be presumed that everything done by an officer in connection with the performance of an official act in the line of his duty was legally done, whether prior to the act, such as giving notice, or determining the existence of conditions prescribed as a prerequisite to legal action, or subsequent to such act.

*Siler v. Siler*, 152 Tenn. 379, 277 S.W. 886 (1925). As noted by the trial court, the Commissioner argued that he "justifiably relied upon the original permit when he approved the major permit modification requested by EWS in 2011, and cites the two 2004 letters from the City of Camden and Benton County indicating their approval of a new or expanded landfill within their respective jurisdictions." Given the presumption set forth in *Siler*, the Commissioner's reliance on the existing permit was justified and he had no further duty relative thereto.

for a new design of the landfill[15] and, because it was not submitted to the regional solid waste board, the Commissioner exceeded his authority by approving the modification. Essentially, they argue that Tenn. Code Ann. § 68-211-814(b)(2)(A) applies in this case because the term "construction," as used therein, encompasses any construction that occurs on the property of a solid waste disposal facility.[16]

Tenn. Code Ann. § 68-211-814(b)(2)(A)–(C) provides:

(2)(A) An applicant for a permit for *construction* or expansion of a solid waste disposal facility or incinerator shall submit a copy of the application to the region at or before the time the application is submitted to the commissioner. . . . The region shall immediately notify the commissioner of its acceptance or rejection of an application.
(B) The region may reject an application for a *new solid waste disposal facility* or incinerator or expansion of an existing solid waste disposal facility or incinerator within the region only upon determining that the application is inconsistent with the solid waste management plan adopted by the county or region and approved by the department, and the region shall document in writing the specific grounds on which the application is inconsistent with such plan.
(C) Where a region rejects an application, the commissioner shall not issue the permit unless the commissioner finds that the decision of the region is arbitrary and capricious and unsupported in the record developed before the region.

(Emphasis added.)

---

[15] The 2011 modification application contains the following narrative summary of the modification to EWS's landfill:

This modification did not increase the landfill volumetric capacity or the final contour elevations of the landfill waste mass. It also did not change the direction of the site drainage. The modifications to the Class II landfill were primarily focused on the modification/enhancement of the landfill liner/leachate collection system and landfill gas collection system. The initial cell of the EWS Class II Landfill had been constructed with a liner/leachate collection system design which was equivalent to a Subtitle D landfill liner/leachate collection system. However, the modified liner/leachate collection system was not depicted on the permit drawings for the entire landfill footprint. Therefore, it was necessary to modify the drawings to illustrate the modification of the liner/leachate collection system along with a proposed design for an active landfill gas collection system.

[16] The Petitioners do not argue that Tenn. Code Ann. § 68-211-814(b)(2)(A) applies because the 2011 modification sought to expand the landfill as contemplated by that statute.

11

Reading Tenn. Code Ann. § 68-211-814(b)(2)(A) and (B) together,[17] it is clear that the term "construction" in subsection (A) specifically pertains to a permit for the construction of a "new solid waste disposal facility"—as used in subsection (B); thus, the Petitioner's argument is not well taken. As discussed above, the 2011 modification did not provide for construction of a new solid waste facility, a fact not contested by Petitioners.[18] Accordingly, Tenn. Code Ann. § 68-211-814(b)(2) did not apply to the 2011 modification, and the Commissioner did not exceed his authority in this respect.[19]

## B. Hazardous Waste

The Petitioners also contend that "TDEC's statutory duty to public health in dealing with solid waste requires them, under these extraordinary circumstances, to find evidence that the waste was <u>not</u> hazardous." The Petitioners argue that aluminum smelter waste is "hazardous waste" by definition because it "reacts violently with water," "forms potentially explosive mixtures with water," or "produces toxic gases, vapors of fumes in a quantity sufficient to present a danger to human health or the environment" when mixed with water. Accordingly, the Petitioners contend that "[w]ithout any evidence or a determination to rely upon, TDEC's decision to allow another 35 acres of [secondary aluminum smelter waste] was arbitrary and contrary to law."

The Petitioners have cited no statute or other authority which establishes such a duty with respect to hazardous waste. The courts may not legislate such a requirement in the absence of a statutory basis. *See Louisville & N. R. Co. v. Nichols*, 80 S.W.2d 656, 658 (Tenn. 1935).[20]

---

[17] When interpreting a statute, the court is to ascertain the intent of the legislature from the natural and ordinary meaning of the language used and in the context of the entire statute. *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996). We are to give effect to every word and assume that the legislature deliberately chose to use these words. *Id.* at 827–28; *Tenn. Manufactured Hous. Ass'n v. Metro. Gov't of Nashville & Davidson Cnty.*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990); *see also Tidwell v. Collins*, 522 S.W.2d 674, 676–77 (Tenn. 1975).

[18] *See* footnote 10.

[19] Having determined that Tenn. Code Ann. § 68-211-814(b)(2) does not apply in this case, we need not address the Commissioner's contention that the Regional Board's plan delegated the authority to approve the siting of landfills, including the expansion of landfills, to the Benton County Commissioners.

[20] The record does show that the toxicity of secondary aluminum smelter waste was included as part of the modification approval process. The record contains a document prepared by TDEC's Division of Solid Waste Management, a portion of which contains responses to public comments regarding whether secondary aluminum smelter waste is a hazardous waste:

12

**Comment #5:** [Aluminum smelter waste] is flammable when wet.

*Response #5: The waste is not flammable, but may heat other flammable materials to ignition point. The waste disposed of at this facility will be kept separate from other wastes. Permit Condition number 6 has been added requiring that aluminum smelter wastes will be monofilled.*

\* \* \*

**Comment #14:** Do you (TDEC) believe aluminum dross (aluminum smelter waste) is toxic?

*Response #14: Secondary aluminum smelter waste is not listed as a hazardous waste. At the present time, there are no known secondary smelters who generate a characteristic hazardous bag house or salt cake waste. All wastes approved for disposal at this facility are required to evaluate and determine the wastes do not meet the definition of Hazardous Wastes as determined by Rule 1200.1-11-(.1)-(.12).*

**Comment # 16:** There were numerous questions/comments . . . expressing concerns about health effects associated with exposures to the ammonia vapors (as well as methane, hydrogen, acetylene, etc) emitted from the landfill . . . .

*Response #16: The following response was provided by the Tennessee Department of Health's Environmental Epidemiology Program (EEP). Their program receives funding from the federal Agency for Toxic Substances and Disease Registry (ATSDR) to assist local, state, and federal environmental regulatory programs with understanding the potential health effects of environmental pollution. The [EEP] has assisted TDEC with the issues at the EWS Landfill. EEP's investigation is continuing.*

\* \* \*

*Aluminum Dross reacts with water. When this happens, some chemical vapors are released. A test of gases inside the landfill showed that ammonia is the most common gas followed by methane and hydrogen. There were some flammable gases such as propane, propylene, ethane, acetonitrile, and acetylene were found in the landfill gas. Other chemical gases were found in much smaller quantities. EEP is considering all of these chemicals in our on-going investigation.*

\* \* \*

*TDEC's Divisions of Air Pollution Control and Solid Waste Management will be conducting a study within the Lockhart Hill subdivision. This study will involve placement of a continuous air monitoring station within the neighborhood for a 90 day period. The station will be maintained and operated solely by TDEC. All data will be gathered and analyzed by TDEC staff, with the raw and processed data to be routed to staff members in the Tennessee Department of Health for review and interpretation.*

**Comment # 17:** Neighbors have been forced to alter lifestyles due to presence of ammonia odor associated with the disposal facility.

*Response #17: Facility-Specific Permit conditions number 1 and 2 have been added to address this issue. Condition 1 requires a landfill gas emission detection and repair program for locating and repairing any sources of gas emissions, and condition 2 requires an approved air monitoring plan to be in place to verify that emissions are being controlled.*

### C.    Injunction

Inasmuch as we have concluded that the trial court erred in voiding the 2008 permit and the 2011 modification and found the remaining issues of the Petitioners to be without merit, the issue raised by Petitioners relative to the denial of injunctive relief is moot.

## VI.    REVIEW OF THE 2011 MODIFICATION

Although the Petitioners do not specifically challenge whether there is material evidence to support the Commissioner's grant of the 2011 modification, we have reviewed the record and conclude that there is such evidence.

Under the certiorari standard, a court may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metro. Bd. of Zoning App.*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); or (3) substitute its judgment for that of the lower tribunal. *421 Corp. v. Metro. Gov't of Nashville*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). "[T]he court's primary resolve is to refrain from substituting its judgment for that of the local governmental body." *McCallen*, 786 S.W.2d at 641; *See Capps v. Metro. Gov't of Nashville and Davidson Cnty.*, 2008 WL 5427972, at *5 (Tenn. Ct. App. Dec. 31, 2008).

The modification requested by EWS was to allow secondary aluminum smelter waste, which had been allowed on a portion of the landfill in 2008, onto the remaining landfill footprint.  In support of its modification application, EWS submitted: an operations manual which included figures and maps, air/gas plans, rare species review, and a leak detection program; a closure plan which included maps and closure/post-closure worksheets and procedures; and hydrogeological reports which included figures and maps, soil tests and logs, and water wells information.  TDEC provided public notice of its intent to issue the permit modification, held a public hearing, and issued a report which included responses to public comments received; all of which are contained in the record.  The record also contains information regarding violations at the EWS landfill, the response of TDEC to those violations, and the measures EWS was required to take to remediate those violations.  Thus, the record contains evidence in support of the Commissioner's decision.  Applying the appropriate standard of review, we may not inquire into the intrinsic correctness of the Commissioner's decision or substitute our judgment for that of the Commissioner. Accordingly, we affirm the grant of the 2011 modification.

**V. CONCLUSION**

For the foregoing reasons, we reverse the judgment of the Chancery Court and dismiss the petition.

_____
RICHARD H. DINKINS, JUDGE